IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA   :
  :
           v.     :     CRIMINAL NO. 03-216
  :
LAMAR EDGE   :

**SURRICK, J.**                                                   **DECEMBER 14, 2005**

## <u>MEMORANDUM & ORDER</u>

Defendant Lamar Edge was charged in a five-count indictment with:  conspiracy to possess with intent to distribute in excess of fifty grams of cocaine base ("crack") and to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846 (Count 1); possession with intent to distribute or aiding and abetting the possession with intent to distribute in excess of fifty grams of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 (Count 2); possession with intent to distribute or aiding and abetting the possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 (Count 3); carrying a firearm or aiding and abetting the carrying of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2 (Count 4); and possession in or affecting commerce of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 5).  (Indictment, Doc. No. 16.)  After a four-day trial, a jury found Defendant guilty on Counts 1 through 4.  (Jury Verdict Sheet, Doc. No. 84.)  In a stipulated non-jury trial that immediately followed the jury's verdict, this Court found Defendant guilty on Count Five.  (July 21, 2005 Tr. at 71-75.)

Presently before the Court is Defendant's Motion To Set Aside The Jury Verdict Pursuant To Federal Rule Of Criminal Procedure 29 (Doc. No. 86), in which  Defendant seeks judgment of acquittal.  He claims that the evidence presented at trial was not sufficient to prove that he possessed any drugs with the intent to distribute, that he possessed any firearm during or in relation to a drug trafficking crime, that he aided or abetted any drug possession or firearm possession crime, or that he engaged in any conspiracy to distribute drugs.  (Doc. No. 86.)  For the following reasons, Defendant's Motion will be denied.

## I.       BACKGROUND

The evidence presented at trial established that on November 11, 2002, at approximately 3:55 PM, Officer Brian Duffy of the Upper Darby Township Police Department ("UDPD") responded to a complaint of excessive noise coming from Apartment J-19 of the Bishop Hill Apartments in Upper Darby, Pennsylvania.  (July 19, 2005 Tr. at 147-48, 168.)  An adult black female appeared at the door in response to Officer Duffy's knock.  (*Id.* at 152.)  From his position in the hallway, Officer Duffy observed a toddler in the apartment as well as bath towels stuffed underneath the door.  (*Id.* at 152-53.)  While Officer Duffy's unoccupied police vehicle was still parked in front of the building and before Officer Duffy had left the building, David Haley, a maintenance worker, observed a black male jump out of the second-story window of Apartment J-19 and run towards the parking area.  (*Id.* at 125-27.)  Haley then observed two black males looking out of the window of Apartment J-19.  (*Id.* at 125-26.)

Haley relayed this information to Lane Murphy, a security officer at the Bishop Hill Apartments.  (July 18, 2005 Tr. at 41.)  Murphy called the UDPD to report Haley's observations. (*Id.* at 44.)  While Murphy was speaking with UDPD, two black males exited J-Building carrying

packages.  (*Id.* at 45; July 19, 2005 Tr. at 127.)  Murphy identified these individuals as Defendant

Edge, who was carrying a red and white Modell's bag, and co-Defendant Dujuan Lewis, who was

carrying two boxes.[1]  (July 18, 2005 Tr. at 45-46, 56-57; July 19, 2005 Tr. at 115.)  Edge and

Lewis placed the boxes and bag into the trunk of a blue Oldsmobile.  Defendant Edge then drove

the blue Oldsmobile to another parking area in the complex away from J-Building while Lewis

went back inside J-Building.  (July 18, 2005 Tr. at 46-48.)

Officer William Tobin of the UDPD responded to Murphy's call and arrived at the

Bishop Hill Apartments at approximately 4:27 P.M.  (July 19, 2005 Tr. at 9.)  Murphy notified

Officer Tobin of what he and Haley had observed and directed Tobin to the blue Oldsmobile.

(*Id.* at 12.)  Officer Tobin drove to the area where the Oldsmobile was parked and exited his

patrol car in order to look at the Oldsmobile's license plate.  (*Id.*)  While waiting for the police

dispatcher to run the plate, Tobin observed Defendant Edge carrying a shoe box and walking

toward the Oldsmobile.  (*Id.* at 13.)  When Edge saw Officer Tobin he took off running.  Tobin

yelled "stop, I'm the police," but Edge kept running.  Officer Tobin pursued him on foot.  (*Id.* at

14.)  As Defendant ran around the buildings, Lewis and Rashaun Yeiser ran out of J-Building

and jumped into a maroon Buick.  (*Id.* at 14-18, July 18, 2005 Tr. at 51. )  Edge also jumped into

the backseat of the Buick as it sped away.  (July 19, 2005 Tr. at 18-19, 20.)

The Buick proceeded onto Bishop Avenue, traveling at a high rate of speed and crossing

into the oncoming lanes of traffic.  (*Id.* at 21.)  As it was being pursued by Officer Tobin, the

---

[1] According to the testimony of defense witness Diane L. Cowan, Haley told her that the
two men he observed peering from the window of J-19 were the same as those he later saw
carrying the packages to the blue Oldsmobile.  (July 20, 2005 Tr. at 69.)  At trial Haley was
unable to affirmatively identify the Defendants.  (*Id.* at 116-20.)

Buick struck two other vehicles and kept going.  (*Id.* at 20, 23.)  The three men in the Buick—

Edge, Lewis, and Yeiser—ultimately jumped out of the moving Buick as it continued on

Wynnbrook Avenue.  (*Id.* at 25.)  As the men fled on foot, the Buick crashed into a house.  (*Id.*)

Within minutes, Officer Tobin apprehended Yeiser.[2]  (*Id.*)  Officer Duffy, who was also involved

in the pursuit, apprehended Defendant Edge and co-Defendant Lewis.  Lewis was the driver of

the Buick.  (*Id.* at 160.)

After the pursuit concluded, UDPD personnel returned to the Bishop Hill Apartments to

check on the welfare of the woman and toddler in J-19.  (*Id.* at 193-94.)  Upon knocking and

receiving no response, a maintenance worker provided police access to the apartment.  (*Id.* at

194.)  Police found no individuals inside, but did see plastic bags of marijuana on the floor of an

open closet and on a TV stand, in plain view.  (*Id.* at 195-96.)  In addition, a police dog trained to

detect drugs reacted positively when it sniffed the blue Oldsmobile driven by Edge.  (*Id.* at 198.)

All of this information was used to obtain a warrant to search both Apartment J-19 and the blue

Oldsmobile.  (*Id.* at 196.)

Upon executing the warrant for Apartment J-19, police found various packages

containing marijuana, unused plastic bags commonly used to package drugs, two scales used for

weighing drugs, $6000 in cash, and a box of 9-millimeter ammunition.  They also found Rashaun

Yeiser's wallet, his birth certificate, a traffic citation indicating Yeiser was the driver of a blue

Oldsmobile, a letter addressed to Yeiser from American Plastic Products Corporation discussing

the purchase of plastic packaging materials, including small plastic boxes or cubes commonly

used to distribute illegal drugs, a Visa bill in Yeiser's name, a Court Notice addressed to Yeiser

---

[2] At the time of trial, Yeiser was dead.  (*See* Tr. Ex. 6-38, Death Certificate.)

and the Rules of Probation and Parole also in Yeiser's name.  (*Id.* at 72-74, 103, 200-214.)

Police found the following items inside the trunk of the blue Oldsmobile:  three large plastic bags

containing marijuana; 341 red glassine bags containing marijuana (found in the Modell's bag);

one glassine bag containing crack (also in the Modell's bag); 1300 small plastic boxes containing

marijuana (some of which were found in the Modell's bag); a large quantity of small plastic

boxes; 289 small plastic boxes containing marijuana; a letter addressed to Rashaun Yeiser;

assorted shopping bags; and one Ruger 9-millimeter handgun, serial number 30574897, with a

magazine containing fifteen 9-millimeter bullets (also in the Modell's bag).  (*Id.* at 238-51.)  A

total of 1822.57 grams of marijuana and 98.3 grams of crack were recovered from the apartment

and automobile.  (July 20, 2005 Tr. at 56-57.)  Philadelphia Police Detective Christopher Lee, a

qualified expert in illegal narcotics distribution, testified that the items seized by the police

pursuant to the search warrants were consistent with the possession of drugs for the purpose of

distribution, not possession for personal use.  (*Id.* at 6-7, 19-24.)

## II.   LEGAL STANDARD

In considering a post-verdict motion for judgment of acquittal under Rule 29,[3] we must

determine "whether, after viewing the evidence in a light most favorable to the prosecution, any

---

[3] Federal Rule of Criminal Procedure 29(a) provides, in pertinent part:  "[t]he court on the
defendant's motion must enter a judgment of acquittal of any offense for which the evidence is
insufficient to sustain a conviction."  The "sole foundation upon which a judgment of acquittal
should be based is a successful challenge to the sufficiency of the government's evidence."
*United States v. Frumento,* 426 F. Supp. 797, 802 n.5 (E.D. Pa. 1976) *quoted in United States v.
Carter,* 966 F. Supp. 336, 340 (E.D. Pa. 1997); *see also* 2A Charles Alan Wright, *Federal
Practice and Procedure* § 466 (3d ed. 2000) ("There is only one ground for a motion for a
judgment of acquittal.  This is that the evidence is insufficient to sustain a conviction of one or
more of the offenses charged in the indictment or information." (internal quotation omitted)).

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).  The evidence must be examined as a whole in the light most favorable to the jury verdict, with the presumption that the jury properly evaluated credibility of the witnesses, found the facts, and drew rational inferences.  *See United States v. Iafelice,* 978 F.2d 92, 94 (3d Cir. 1992).  The verdict of the jury must be upheld unless, viewing the evidence in this fashion, no rational jury could have found the defendant guilty beyond a reasonable doubt.  *Jackson,* 443 U.S. at 319; *United States v. Ashfield,* 735 F.2d 101, 106 (3d Cir. 1984).

## III.   DISCUSSION

### A.      Sufficiency of Evidence With Regard to Knowing Possession

Defendant argues that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he knowingly possessed either drugs or a firearm.  (Doc. No. 86 ¶ 5.)  A conviction for possession with intent to distribute drugs, as charged in Counts 2 and 3 of the Indictment, requires proof that the defendant knowingly possessed the drugs at issue.  *See* 21 U.S.C. § 841(a)(1).  In order to prove the crime of possession of a firearm in relation to a drug trafficking crime, as charged in Count 4, the government must prove that the defendant knowingly possessed the firearm at issue.  *See* 21 U.S.C. § 924(c).  The charge in Count 5, possession of a firearm after having been convicted of a crime punishable by imprisonment for over one year, also requires knowing possession of a firearm.  *See* 21 U.S.C. § 922(g)(1).

Knowing possession can be established through a showing of either actual possession or constructive possession.  *United States v. Figueroa*, Crim. No. 00-094, 2000 U.S. Dist. LEXIS 13344, at *7 (E.D. Pa. Sept. 18, 2000).

> A person who knowingly has direct physical control over a thing, at a given time,
> is then in actual possession of it.  A person who, although not in actual
> possession, knowingly has both the power and the intention at a given time to
> exercise domain or control over a thing . . . is then in constructive possession of it.

*Id.* (quoting *United States v. Blackston*, 940 F.2d 877, 883 (3d Cir. 1991)).  "[M]ere proximity to

[contraband], or mere presence on the property where it is located or mere association with the

person who does control the [contraband], is insufficient to support a finding of possession."

*United States v. Davis*, 461 F.2d 1026, 1036 (3d Cir. 1972).

In this case, the evidence presented at trial and the reasonable inferences to be drawn

therefrom established that Defendant was in actual possession of the contraband.  Defendant

carried a white Modell's bag, which contained a handgun and various packages of marijuana and

crack cocaine from J-Building and put it in the trunk of the blue Oldsmobile.  Similar packages

containing marijuana were found in boxes loaded into the trunk by co-Defendant Lewis.  The

Modell's shopping bag was a standard plastic shopping bag that one would get from any store.  It

was made of thin plastic, and was open at the top with carrying handles.  An individual handling

this bag would certainly be able to see the contents of the bag.

In addition, the evidence at trial linked both Defendant and the blue Oldsmobile to

Apartment J-19.  While Officer Duffy was checking Apartment J-19 an individual jumped from

the rear window of that second floor apartment.  At the same time, two black males looked out of

the window of Apartment J-19.  Shortly thereafter, the two black males came out of J-Building

and began loading contraband into the blue Oldsmobile.  Those individuals were Defendant Edge

and co-Defendant Lewis.  When police entered Apartment J-19, packages of marijuana were in

plain view.  A subsequent search of Apartment  J-19 revealed additional packages of marijuana,

7

scales for weighing illegal drugs, drug packaging materials, 9-millimeter ammunition and other items consistent with the distribution of narcotics.  The drugs and the packaging materials were similar to those found in the trunk of the Oldsmobile.  Items identifying Rashaun Yeiser were found in Apartment J-19 and in the trunk of the Oldsmobile.

After loading the trunk of the vehicle, Defendant drove the blue Oldsmobile, moving it from near J-Building to another area of the apartment complex away from J-Building.  Certainly the fact that Edge put illegal drugs and a firearm in the vehicle and then moved the vehicle to another location away from J-Building are factors to consider in determining whether he knowingly exercised dominion and control over the drugs and firearm.  *United States v. Brown*, 3 F.3d 673, 682 (3d Cir. 1993) (citing *Iafelice*, 978 F.2d at 95-98); *Figueroa*, 2000 U.S. Dist. LEXIS 13344, at *7-8 (citing *Iafelice*, 978 F.2d at 97).

Finally, the testimony established that Defendant attempted to evade police only minutes after being observed carrying a shopping bag containing marijuana, crack, and a loaded handgun.  "Flight is viewed in the law of evidence as admission by conduct which expresses consciousness of guilt."  *United States v. Scarfo*, 711 F. Supp. 1315, 1321  (E.D. Pa. 1989).  Defendant first ran from Officer Tobin, then jumped into a vehicle that sped away from the police at a high rate of speed.  While the vehicle was being pursued by police and while the car was still moving, Defendant jumped out of the vehicle and ran.  One is certainly left to wonder why, if Edge was doing nothing illegal, he would take such extreme action to evade the police.  Defendant's flight is substantial evidence that he was conscious of the criminal nature of his behavior.  This, coupled with all of the other evidence presented at trial, provides significant support for the jury's finding that Defendant knowingly possessed drugs with intent to distribute and possessed

the firearm in furtherance of that crime.  *See United States v. Davis*, 233 F. Supp. 2d 695, 698

(E.D. Pa. 2002) (finding inference of guilt when defendants led police on high speed car chase).

Defendant argues that his case is analogous to *United States v. Jenkins*, 90 F.3d 814 (3d

Cir. 1996), *United States v. Brown*, 3 F.3d 673 (3d Cir. 1993), and *United States v. Vasquez-*

*Chan*, 978 F.2d 546 (9th Cir. 1992), all of which are drug possession cases where guilty verdicts

were later reversed.  (Doc. No. 86 ¶¶ 5, 6-9.)  The cases cited by Defendant are inapposite.  The

defendants in those cases were arrested while present in residences where police also found

narcotics.  None of those cases involved evidence that a defendant *actually possessed*

contraband, none involved evidence of a defendant transporting contraband in an automobile,

and none involved evidence of flight from police.  The evidence in this case was clearly

sufficient to permit a rational jury to find that Defendant knowingly possessed both a firearm and

drugs.

### B.      Sufficiency of Evidence With Regard to Conspiracy

Defendant next argues that evidence presented at trial was not sufficient to support a

guilty verdict on Count 1, which charged conspiracy to possess with intent to distribute both

crack and marijuana.  (Doc. No. 86 ¶ 11.)  Specifically, Defendant contends that the Government

failed to prove the existence of any agreement between two or more individuals to commit a

criminal act.  (*Id.*)  In order to establish the existence of a conspiracy, the government must prove

that such an agreement existed between two or more people, that the defendant knew the purpose

of that agreement, and that the defendant deliberately joined the agreement with the intent to

further its unlawful purpose.  *See United States v. Mastrangelo*, 172 F.3d 288, 291 (3d Cir.

1998).  "This proof incorporates a demonstration that a defendant has 'knowledge of the illegal

9

objective contemplated by the conspiracy.'" *Id.* (quoting *United States v. Wexler*, 838 F.2d 88, 91 (3d Cir. 1988)).

The evidence seized from Apartment J-19 and the blue Oldsmobile indicates that Yeiser was an occupant of Apartment J-19, and that a significant drug operation was being conducted in the apartment.  Drugs and drug paraphernalia were found in plain view in the apartment along with a large amount of cash and ammunition.  When a police officer appeared at Apartment J-19, Defendant Edge and co-Defendant Lewis acted in concert to take drugs, drug paraphernalia, and a firearm out of the apartment and load it into the trunk of Yeiser's blue Oldsmobile.  Defendant Edge then moved the Oldsmobile to a location away from Apartment J-19.  Thereafter, Edge, Lewis, and Yeiser together fled from police.  The suggestion that the evidence here was insufficient to support the jury's verdict on Count 1 is ludicrous.  One can certainly infer from this joint action that an agreement existed between Lewis, Edge, and Yeiser to engage in illegal activity.  When a party "associates himself with an ongoing conspiracy[, he] may become a party to that agreement, either expressly by agreement or implicitly by acts done in furtherance of the conspiracy." *United States v. Klein*, 515 F.2d 751, 753 (3d Cir. 1975).  The nature Defendant Edge's conduct, including his knowing possession of drugs and a firearm, establishes that his participation in this agreement was deliberate and intentional.  This evidence, along with the flight of all three individuals, provided more than sufficient basis for a finding of guilty of the crime of conspiracy.

**C.      Sufficiency of Evidence With Regard to Possession of a Firearm During a Drug Trafficking Crime**

Defendant separately argues that the Government has failed to present evidence sufficient to establish guilt as to Count 4 of the Indictment, which charges Defendant with carrying a firearm or aiding and abetting the carrying of a firearm during and in relation to a drug trafficking crime.  (Doc. No. 85 ¶ 13.)  We have already concluded that the evidence is sufficient to establish Defendant's knowing possession of the firearm and drugs.  However, the Government must also establish that "the gun in defendant's possession actually furthered a drug trafficking offense."  *United States v. Bobb*, No. 3:02cr333, 2005 U.S. Dist. LEXIS 29742, at *10 (M.D. Pa. Nov. 16, 2005).  Defendant argues that the prosecution failed to meet its burden in this respect. (Doc. No. 85 ¶ 13.)

The following "nonexclusive factors" are relevant to the determination of whether possession of a firearm was in furtherance of a drug trafficking crime:  "the type of drug activity that is being conducted; accessibility of the firearm; whether the weapon is stolen; the status of the possession (legitimate or illegal); whether the gun is loaded; proximity to drugs or drug profits; and the time and circumstances under which the gun is found."  *Bobb*, 2005 U.S. Dist. LEXIS 29742, at *10-11 (citing *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004)).  In this case, the loaded gun was found in the same plastic bag as packaged narcotics.  This plastic bag was in Defendant Edge's possession.  This bag was removed from Apartment J-19 after the appearance of police.  The bag containing the firearm was then loaded into the trunk of a car. Items in the car and the apartment suggested the existence of an operation to distribute illegal drugs.  The Government's drug expert testified that for their protection drug dealers usually have guns in close proximity as they ply their trade.  Most of the *Bobb* factors are implicated here.

There is more than sufficient basis to conclude, as the jury did, that this gun was being used in furtherance of a drug trafficking offense.

### D.     Sufficiency of the Evidence With Regard to Aiding and Abetting

Finally, the Indictment charges Defendant with having aided and abetted the commission of the offenses in Counts 2, 3, and 4.  Defendant argues that the evidence presented at trial was insufficient to establish the elements of aiding and abetting.  (Doc. No. 85 ¶ 12.)  We have already determined that the evidence is sufficient to support a finding that Defendant is guilty as a principal in committing these crimes.  In any event, to establish aiding and abetting, the Government must show (1) that someone has committed the crime charged, and (2) that the defendant willfully associated himself with the crime and sought by some act to make it succeed. *See United States v. Ehrenberg*, 354 F. Supp. 460, 463 (E.D. Pa. 1973).  The evidence and reasonable inference here indicate that Yeiser and others were distributing marijuana and crack cocaine out of Apartment J-19.  After the appearance of Officer Duffy, Defendant Edge removed contraband from Apartment J-19 and placed it in the Oldsmobile.  He then relocated the vehicle and later fled with Yeiser.  Defendant's conduct establishes a willful association with this illegal venture and a purposeful role in helping it succeed.  The evidence was more than sufficient to establish that Defendant aided and abetted the commission of the offenses for which he is charged.

## IV.   CONCLUSION

According to Defendant, the trial testimony indicated that "Lamar Edge could have been doing a favor for a friend, by loading up the trunk of the car at his request, never exercising real dominion or control over that third person's property."  (*Id.* at ¶ 9.)  Defendant's innocent

explanation does not explain his flight.  Moreover, while such a conclusion might be possible, the fact that such a possibility exists does not require the entry of a judgment of acquittal.  The evidence presented at trial "does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt." *United States v. Sandini*, 888 F.2d 300, 311 (3d Cir. 1989) (quoting *United States v. Cooper*, 567 F.2d 252, 254 (3d Cir. 1977)).  The Government has successfully established such a case here.  Based on the evidence, we find that a rational jury could find the essential elements of the crimes charged beyond a reasonable doubt.  In fact, it is difficult to imagine how a rational jury could find these Defendants not guilty.

Accordingly, we will deny Defendant's Motion.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA   :
                           :
              v.           :        CRIMINAL NO. 03-216
                           :
LAMAR EDGE                 :

## **<u>ORDER</u>**

AND NOW, this 14th day of December, 2005, upon consideration of Defendant Lamar Edge's Motion To Set Aside The Jury Verdict Pursuant To Federal Rule Of Criminal Procedure 29 (Doc. No. 86) and the Government's Response in opposition thereto (Doc. No. 95), and after a review of the evidence and testimony presented at trial, it is ORDERED that Defendant's Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

S:/R. Barclay Surrick, Judge